UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) Criminal Action No. 5: 19-158-DCR |
| V. | ) |
| TERRICO WILLIAMS, | ) **MEMORANDUM OPINION** |
| Defendant. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Terrico Williams is charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  Williams' attorney, Gerry Harris, filed a motion for a competency evaluation, reporting simply that he had reason to believe that Williams has issues "affect[ing] his ability to understand the charges against him" and "may lack substantial capacity to either appreciate the criminality of his conduct or to conform his conduct to the requirement of the law or to understand the proceedings and to assist counsel with the defense of [the] matter."  [Record No. 25]  The United States did not oppose the motion in light of current and former counsels' apparent difficulty working with Williams.  [Record No. 28]  The Court granted the motion on February 20, 2020.  [Record No. 29]

The evaluation occurred at the Federal Medical Center in Lexington, Kentucky ("FMC Lexington").  Both parties received the report of Kristen Schramm, Psy.D., issued on May 5, 2020.  Dr. Schramm concludes that Williams is competent for further proceedings.[1]  The Court

---

[1]    Schramm also opined that Williams was not suffering from a mental disease or defect such that he was unable to appreciate the nature and quality or the wrongfulness of his actions at the time of the alleged offense.  [Record No. 35, Filed Under Seal]

held a competency hearing on August 7, 2020, during which Schramm testified consistent with her report. At the conclusion of the hearing, the Court determined that Williams understood the proceedings against him and was able to assist in his defense, rendering him competent to proceed to trial. This memorandum opinion supplements that oral ruling.

## I.

"To be competent to stand trial . . . a criminal defendant must possess (1) a 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding,' and (2) 'a rational as well as factual understanding of the proceedings against him.'" *United States v. Dubrule*, 822 F.3d 866, 875 (6th Cir. 2016) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)); 18 U.S.C. § 4241(a). A defendant is not incompetent simply because he cannot get along with his attorney or because he disapproves of his attorney's performance. *Dubrule*, 822 F.3d at 876. Schramm's report, supplemented by her testimony during the competency hearing, establishes that both criteria are satisfied in this case.

## II.

Schramm met with Williams for more than four hours over the course of eight meetings during which she conducted clinical interviews and administered psychological tests. Williams was minimally cooperative with respect to providing background information, but did not exhibit significant memory or cognitive deficits that would have impaired his ability to recount such information. He also did not exhibit any perceptual or thought disturbances that would have inhibited his ability to provide accurate information. Schramm was unable to verify the historical information that Williams did provide because he refused to provide a family member's contact information.

Williams advised Schramm that he had completed eighth grade and earned a GED in 2012. Schramm requested records from Paul Lawrence Dunbar High School, but did not receive them. Schramm testified that school records potentially could have indicated conduct pointing to a diagnosis such as antisocial personality disorder. However, such a diagnosis would not necessarily render the defendant incompetent to stand trial, and the lack of records did not change Schramm's ultimate opinion that Williams was competent.

Schramm noted that Williams did not exhibit any signs of acute psychological distress or psychosis upon his arrival at FMC Lexington on February 28, 2020. He was cleared to be housed in the general population and was assigned to an unlocked room. He received one sanction during the evaluation period: on March 3, 2020, he was placed in the Special Housing Unit for refusing to obey an order.

Williams was oriented to person, place, and time throughout the evaluation period and had no significant memory, attention, or concentration deficits. His speech was within normal limits and he displayed good eye contact. Mental status examinations throughout the evaluation period did not reveal clinically significant depression, irritability, or mania. He exhibited no unusual mannerisms, bizarre behavior, disorganization, or disorientation. At no point did he appear to be suffering from paranoia, delusions, hallucinations, or any other psychotic symptoms. On the contrary, he presented as lucid, goal-oriented, and attentive at all times. Williams denied mental health symptoms. He reported brief psychiatric treatment with antidepressant medication "to treat a specific stressor" in the past, but otherwise had not received mental health treatment.

Williams demonstrated sufficient reading, writing, and verbal communication abilities. Williams reported that, prior to his arrest, he was able to live independently. Williams also

was assessed medically during the evaluation period and was not diagnosed with any medical conditions that would impact his ability to proceed to trial.

Schramm administered the Revised Competency Assessment Instrument ("RCAI"), which is a structured interview of competency-related issues. The RCAI assessed Williams' understanding of his charge, his understanding of the roles and functions of courtroom participants and proceedings, his appreciation of penalties, his ability to cooperate with counsel, and his capacity to engage appropriate in the court proceedings.

Williams was able to identify his pending charge and identified the potential penalty as 62 to 72 months' imprisonment. He was able to describe guilty and not guilty pleas, and understood that pleading guilty meant forfeiting certain rights, including the right to a trial. Williams identified his attorney by name and indicated his awareness that information he shared with his attorney was confidential. Williams advised Schramm that he was dissatisfied with his attorney because "he don't fight [the case] as he suppose [sic] to." Williams elaborated that he had asked Harris to file unspecified motions, but Harris had not done so.

Williams recalled the circumstances surrounding his charge with clarity and specificity. He expressed a willingness to alert counsel should a witness lie during the proceedings or should he have any difficulties understanding the proceedings. Williams denied having difficulty conducting himself properly during court proceedings, indicating that he is expected to "pay attention" and be "respectful" in the courtroom.

Williams displayed an adequate understanding of the legal system and referenced his involvement in a prior jury trial. He recognized the adversarial nature of the proceedings and displayed a "clear understanding" of the roles of prosecutor and defense attorney. He further recognized that the jury makes a finding of guilt or innocence after hearing all of the evidence.

Williams stated that in "no way, shape, or form" is he mentally ill. He referenced his prior involvement in state criminal proceedings and indicated that his competency has never been questioned.

At times, Schramm was required to provide legally relevant information. While Williams was receptive to some of the information Schramm provided, he was unwilling to consider some information that was contradictory to his beliefs. For example, Williams refused to acknowledge that a prior felony conviction is an element of the offense with which he is currently charged. However, Schramm observed that this is due Williams' personality style, not a mental disease such as psychosis. Additionally, Williams opted not to answer some questions, citing his pending legal case and the non-confidential nature of the evaluation.

Williams' responses to legally-focused questions did not contain psychotic or delusional thinking. Schramm characterized Williams' sometimes aggressive communication and rigid thinking as volitional in nature and not symptoms of a delusional or otherwise psychotic thought process. She opined that, while his personality style may make him difficult to work with, he does have the capacity to disclose relevant information to his attorney, to consider various courses of action, to provide relevant testimony if necessary, and to make decisions following consultation with his attorney.

Based on the evidence presented, the Court finds that Defendant Terrico Williams is competent to understand the nature and consequences of the proceedings against him and to properly assist in his defense.

- 6 -

Dated: August 11, 2020.

*signed*
Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky